May it please the Court, Ashish Desai on behalf of the plaintiffs and appellants. In our particular case today we're apparently dealing with planes, trains, and automobiles, but we've got trucks. So we've got two issues that we need to decide. We believe the District Court committed clear error in two different areas. One is a job situs test. We've been talking about that all morning. The second is the burden shifting under Mount Clemens. Let me start with the job situs test. I think the confusion that the Court has had is perfectly personified by the truck drivers in this particular case. If you take a look at where we want to start, the job situs test saying that you have to spend more than 50% of your time in California before the labor code applies, that was so confusing the Court got it completely mixed up. We know that that can't be the law because Sullivan v. Oracle teaches us those people only spent 2% of their time in California, but they were entitled to overtime. So now the question becomes what happens to rest break claims? Do they follow? Meal break claims do they follow? Pay stub claims, which we know there's a lot of issues with, and minimum wage claims. Well, the California Supreme Court has answered it as to the overtime claims. We know that. Sullivan says if you spend any time in California, by the way, even if you spend a day, AB 60 applies. If you work more than eight hours a day in California, you're entitled to overtime. So that's that. Whether they worked a week or a day. Overtime is not what the issue is here, right? Here is not overtime. It is not the issue. And here's why, Judge Friedland, because you had it exactly right. Judge Chhabra's decision, that's the answer. It is the answer, okay? Why is it the answer? In our case, they say, look, does California law apply to people who travel outside of California? Yes or no? Answer? Yes. I didn't realize it until just recently. Here's why. Wage Order 9, what everybody's been talking about, what is it, what is it regulating? The transportation industry. That's the entire wage order. The legislative, the IWC rather, knew what they were doing. How do we know they knew they were doing? There are four clues in Wage Order 9 that tell us that they were dealing with four clues. Number one, they talk about the Motor Carrier Act. Well, where did, when do you talk about the Motor, the Motor Carrier Act is under the FLSA, which is the broad federal labor law that applies unless you have a state law that's better for the employee. Under the federal law, it says that if you're driving a truck across state lines and your truck weighs more than a thousand pounds, you're dealing with interstate commerce, there's no overtime. So you know what California said under Wage Order 9 for truck drivers? They said, fine, we incorporate that. And we say that if you're a truck driver and you're going across state lines, we agree, you don't have to pay overtime because everybody's got sketchy overtime laws. But then they came back and they talked about the FLSA. We've talked about collective bargaining. By the way, no collective bargaining for us. We're free and clear. And finally, they talked about the federal law, meaning that they're dealing with more than one state. The IWC knew that very well and they passed it. They said that truck drivers and other people, you don't have to pay overtime to, but you have to provide them with minimum wage. That's what the Wage Order says. You have to provide them with meal breaks and rest breaks. So that's where we end up. Now, if the panel agrees with me on that, and I think we're all in agreement that Wage Order 9 does not apply, why don't we go to see what the Washington Supreme Court did? So wait, can I just pause on the California part? So if we agree with part of what you're saying, at least. So if we say for the work, the driving in California, you get minimum wage and rest break and meal break protections. It seems like the district court here believed that because of the safe harbor and because of what actually happened with the meal breaks, there actually wasn't a violation in California. So do you need us to talk about what happened outside California for you to win on anything? Yeah, well, I'm going to talk about why he didn't win. What the judge did, got so confused on job situs, is he didn't credit any of our evidence. The people in our case, the truck drivers, they would spend three hours washing their trucks. They had to go wash their trucks. They had to perform pre-shift work in California. Yeah, but then there's the safe harbor. So California has this safe harbor thing. No, they don't. What you're talking about? That wasn't the law when we came around. 226.2 was passed just recently. What it said was during a certain time period, it provides a safe harbor if you pay 4%. If you know you screwed up under the Bluford analysis, and I call it the Cardenas analysis because that was my case before Bluford, if you use a piece rate system and don't pay people for all their miles worked and you screw that up, we'll have a safe harbor provision where if you pay 4% of their wages, we'll put it for this period of time, not the entire point. Okay, but the district court thought that the safe harbor took care of the minimum wage issues for the time in California, and I don't think you appealed it. I don't understand where in your brief you say, wait a second, the district court didn't get this right. No, we did, but we didn't appeal that part because what they said is that we didn't get, our people couldn't even make the claim under the safe harbor because they were not employed during that time period. So why didn't you tell us that in your brief? We did, we said that we don't dispute that they weren't employed during the safe harbor period. Therefore, that whatever they did on the safe harbor deals with employees who are not the people that we were representing. Does that make any sense? I'm thoroughly confused now. Okay. What's the time period for which you're seeking relief in this case? What's the time period? Four years before the filing of the complaint. Okay, give me the years. I don't have it in front of me. I have an excuse for not knowing that particular fact. It's your case. You don't know the time period? I've got a lot of cases, Your Honor. You think you've got a lot of cases. Okay, well, what I'm trying, I thought, just as Judge Friedlander said, I thought what the district court said was whatever the time period going back from the filing of the complaint that you're seeking relief from, the defendant's compliance with the safe harbor provision here knocked out all of that, all of the claims you had during that time period. Then, for the post, whatever that, it's like a 2016 cutoff, for any relief you were seeking beyond that date, your clients did not have standing to seek, to pursue the claim because they were no longer employed. They weren't aggrieved employees for the period going forward. All of that seemed to me to be completely right. And then I looked at your opening brief, and as Judge Friedlander said, you never even challenged that. And then in your reply brief, in the last page, you come up with some reference to another case as an explanation for why you didn't appeal it in this case, and that doesn't really help you. The safe harbor provision only applies for a certain period of time. Right. That covers... I don't know what our... That's why I'm asking you... I know, I know. Now I get it. Let's say, I think we filed it two years ago. It's 2015. We go four years back, 2011. There's no way the safe harbor applies. So where does it say that in your opening brief? It doesn't say that at all. The decision, the court's decision, Judge Shub's decision, doesn't say the safe harbor does away with our claims. I think it does say that. No. It says that during the time period they worked in California, there was insufficient evidence to show that they actually worked in California because they did not separate their time between California and non-California time. That was my second point. But for the meal and rest breaks, I thought there was a holding that you had complied well enough, either between the safe harbor or just in terms of what you had told the employees. No, they didn't comply at all. What they did here was pay on a mileage-based system, a piece rate system. They paid them 41 cents a mile, no matter what they did. The reason that that didn't comply with California law is that they only get paid, and this goes to the federal averaging, Your Honor, that I think Judge Watford was trying to understand earlier. Our truck drivers only get paid when their wheels are rolling, 41 cents a mile. When the wheels are not rolling and they're inspecting the truck, they're putting fuel in the truck, they're doing all the other paperwork that's required, how can they make any money? Wheels aren't going. They're making zero. That's why that particular pay provision does not apply. It was undisputed that that's the way they paid their employees until September of 2016. Okay? Then they changed their entire pay system. But before then, what we have is a situation where there's no doubt they didn't comply with the law. But the district court thought that they'd taken care of that with the safe harbor. The safe harbor is inapplicable by statute to the claimant. Okay. So where does it say that in your opening brief? The problem we have is I think you've waived any problem with how the district court resolved this issue. I think if the court takes a look again at the decision that Judge Shub made, if he just said that 226.2 solved the entire problem, that would be it, case closed, and send it home. Why do we need to talk about anything else? That's not what he said. I thought all he talked about beyond that was for the, again, I don't have the dates in mind, but it was like a post-2016 period. And he said that, okay, fine, the safe harbor, whenever they made that payment, it obviously doesn't absolve them going forward. It's just a backward-looking thing. But even going backwards, it only applies for a certain period of time, not the entire time. Okay. By statute. Okay. But so then how did the court enter judgment, you know, ending the case then? That's what I guess I'm confused about. What the court said was we've got two people here who have claims from this period of time, okay, the entire statute. As to the first part of the claims, they didn't separate their time from California and non-California, so evidentially they didn't make a showing. As to the second part of the claims, there's a safe harbor for this part. And as to the time after we made the change, they weren't employed. And that's how the judge got to the fact that it's a summary, not a summary judgment, this was a trial. Okay. So let me just make sure I got it straight. So you're saying that the safe harbor protection that the defendant gets by making this 4% payment, whatever it is, it goes from some year back, but then you have a period that goes back even further that it doesn't cover? Right. And you're saying as to that portion of the claim, the judge just faulted you on not separating out the California versus non-California? Correct, Your Honor. Okay. And I'm sorry if I didn't make that clear or if our briefs didn't make that clear. I didn't think this was an issue at all, quite frankly. I thought the decision was pretty clear on how it separated it out. But getting back to why the court did not apply our claims to the time our drivers spent outside of California, the court said, used the jobsitis test and said, in our particular case, our drivers spent 30% of their time in California, 20% in Texas, another 20 in Florida. They didn't primarily spend their time in any state. And so according to the defendants, we still don't know what state law applies. So the problem is, what if we agree with you that you should get minimum wage just for the time in California? I guess I'm not sure why you didn't have — it seems like then you do get into this burden problem of who shows what. But it seems like the judge was struggling with the idea that you didn't really show at all how much you worked in California. Well, that's what the judge said. But, in fact, the testimony shows differently. The workers did all they could. Under Anderson v. Mount Clemens, it knows that it's almost impossible for workers to determine on a minute-by-minute basis where they spend their time. That's why it tells the employer they have to meet that requirement by recording all this time. Now, if the defendant doesn't record this time, which it didn't here, there's no way for a truck driver to know last Tuesday what percentage time they spent in California versus Texas or Florida. So then they say you never argued that in the district court. We argued it up and down, Your Honor. But I think I'm right that they say you didn't make that argument in a timely way. So can you point us to where you argued it at the right times in the district court? Pre-trial. I think we had a pre-trial filing in which we asked for burden shifting under Anderson v. Mount Clemens. Not only that — Can you just tell us where in the record that is? It's in the reply brief. And I don't have the reply brief in front of me. But in the reply brief, we quoted the pre-trial statement that we filed. Not only did we file a pre-trial statement, this is an evidentiary burden. This is a burden that should apply no matter what. This isn't something that I have to come up here and talk about. This is a situation where the Supreme Court has said, and Tyson has confirmed, that where the employer doesn't keep adequate records, the reasonable estimates of the employee control. And our clients all testified as best they could. They couldn't separate it into California and non-California, which is not surprising. Neither could their people. If you don't keep track of that, there's no way to break it out between those two. Let me just tell you what I think the test is. It says that what you filed was that you would file a motion in limine, but then you never did file the motion in limine. We filed a pre-trial statement with the court. That statement said we're going to file these motions in limine. Judge Shub said, I don't hear motions in limine. Don't file that. And so we said, okay. So now what do you want us to do? That can hardly be considered a waiver. Not only that, but we brought it up in oral argument many times. And in my closing argument, I said they didn't meet their burden of proof because the reasonable estimates should control. And there was no cross-examination on my clients on did you really spend the time washing the car or didn't you? Everybody knows they spent the time working here in California. The question is, did they get paid for it? And the answer to that is no. Let me make one more point about the Dormant Commerce Clause, and I know I've got to get out of here, is that the defendants are talking about this as if it's going to create an unreasonable burden under the Dormant Commerce Clause if we impose these regulations. I think it's just the opposite. I think what happened here is a perfect example. You've got a Florida company coming in here, taking California routes. There are California companies, trucking companies, trust me, that will take these routes and do them in California. But what they've done is they've come in here, hired our California workers, and had them do these routes. And just because they're a Florida company, they say they don't have to comply with California law. Well, what does that do to the California employers in California who hire truck drivers, bid on the same routes, and have to comply with California law? They have to pay minimum wage, overtime, wage statements, everything else. If the out-of-state workers are being treated differently, meaning more leniently, that creates a Dormant Commerce Clause problem. And that's why I think in this particular situation, you have to say that the law applies equally to all of these workers. If you spend – Wait a second. The Dormant Commerce Clause is about putting burdens on out-of-state. You're now saying if you are easier on out-of-state, you violate the Dormant Commerce Clause? It's about being even-handed, not about burdens. Yeah, but even-handed is what you're allowed to do. I'm saying you're being easier on the out-of-state people. Can you cite any case that says being easier on out-of-state, not regulating out-of-state work or other kinds of out-of-state activity, violates the Dormant Commerce Clause? Pike. Pike? Pike. Because it says unreasonable. It says it's – okay, maybe if you don't want to say – view it in a reverse Dormant Commerce Clause way, but what I'm saying is that you can't, under a UCL or an antitrust argument, we've got a UCL claim here, it would be unfair to treat the out-of-state employer differently than the in-state employee. I think you're just – you're echoing the policy ground that motivated the California Supreme Court decision in Sullivan, that we don't want to create this incentive for out-of-state employers to bring in. I get that. I just don't think it's under the Dormant Commerce Clause. That's all. Okay, that's fair enough.  We'll give you a little bit of time. Thank you, Your Honor. Okay. Let's hear from counsel for the defendant. Good morning, Your Honors. Richard Rom, Whittler Mendelsohn for Indian River. I'm here with Brittany Torres who pleads the Court. Could you maybe just start by responding to your opponent's discussion with us about the effect of the safe harbor? Yes, I would very much like to. First of all, this is a PAGA action, except for the two individual plaintiffs. It's about PAGA. And in – actually, just before I get to your question, I wanted to clear up something. Judge Shub had two different bases for his decision. What Mr. Desai was referring to had to do with work in California, work outside of California. That was one part. Second basis, and I'll read here, it's on ER 18C, safe harbor. Even assuming California Labor Codes provisions applied extraterritorially or that plaintiffs met their burden approved to establish the extent of any accompanying penalties or damages, the Court concludes that California's safe harbor provision in Labor Code Section 226.2 bars plaintiffs' claims, period. That's what I remember. Your opponent, though, says that there is a period of the action that is not covered by the safe harbor. First, even if there were, Mr. Desai has not challenged that. Let's assume, let's forget about labor. I'm hearing an awful lot about this is waived and that is waived. I'd like to hear something about the merits. Certainly. And in 226.2B, again, the reason I raised this, Judge Rakoff, is that this wasn't briefed for the very purpose, I mean, because it wasn't in the opening brief. But if you go to 226.2B, this is the safe harbor provision. And it says, I don't want to read the whole thing, based solely on the employer's failure to timely pay the employee the compensation due, rest and recovery periods, and other nonproductive time for time periods prior to and including December 31, 2015. If I know later than December 15, 2016, an employer complies with all the following and goes through that. So you say it is retroactive if you subsequently comply? It is. And the legislation, the history bears that out. I'm just looking at page ER18, which you were just reading from. Yes. So Judge Shub writes that the labor code provision 226.2B provides that if an employer pays its current and former piece rate employees 4 percent of their gross wages between July 1, 2012 and December 31, 2015. So is that the only retroactive period that's covered? No, Your Honor. I just read from B2. I'm sorry, from B. This was, and it's borne out by the legislative history, what the agreement was when the Department of Industrial Relations was negotiating with agriculture. This was an incentive. You only have to pay three-and-a-half years of liability, but you get forgiveness forever. Going back. Yes. Okay, where is that in the statute? What am I looking at? B, what I was reading from simply says time periods, all time periods, for time periods prior to and including December 31, 2015. Oh, got it. Okay, I see. So there's no cutoff in terms of going back, and that was the incentive to get people to agree to it. Got it. So you just have to pay for this defined period. Three-and-a-half period, yes. But you were absolved forever going back. Exactly. Okay. Furthermore, when we paid the $282,000, the 4 percent gross, we did not deduct or limit it in any way for time outside the state. So this makes this whole burden. Your argument, though, is you could have. Consistent with what you're arguing here, you think you could have. Yes. We think we could have, but we did not. So to the extent that you have plaintiffs, the two plaintiffs were the only ones who had claims for damages. They were made whole. They both received, it's in the record, they received the checks, so they have no claims there. And as you noted, Judge Chubb found the Indian River provided rest breaks. That's not contested, and it was not appealed. So there you have the entire decision, in terms of whether it's extraterritorial or in California. First of all, we're not contesting in this brief on this appeal that the time in California they shouldn't be paid for. That was not our argument. Our argument was they should not be paid under California law for work done outside of California. Nevertheless, we did pay them for it with the safe harbor, for the very purpose that we didn't want to end up here. We thought we would pay them all, extinguish that liability, and we can move on. So we have a judgment, a separate basis for the judgment, that one, not just waiver, but that was not challenged, that was not appealed. But they are now appealed. So, I mean, we might agree with you. But if it does seem like there is still an issue, as I understand it, in this appeal, because they say they should get minimum wage going forward for all the time these workers work because they live in California, essentially, and some of their work is in California, so they want minimum wage for the time in Nevada and Colorado and wherever else, and that I think they have appealed, and that would still be in this case if we agreed with them? No, Your Honor. This was a POG action. It wasn't a class action. So they can't ask for wages for anyone. It was simply to punish Indian River for work that was done outside the state and to have civil penalties assessed against them. That's all it was. And so after you're correct in that the safe harbor ends at July 1, 2016, and what Judge Shub held is that since, as POG plaintiffs, they had no live claims themselves, they themselves had not been injured. Their POG claims had been. Because they stopped working for you? No. That is true. They did stop working for us because the safe harbor extinguished their claims. Okay. But after so starting in 2016, were they still working for you? No. No. They left long before that. Okay. So when you changed your pay formula to be different than it was at the time, these plaintiffs are no longer getting the new pay formula? Or never were getting the new pay formula? Never were. Never were. Yes. Yes. That's correct. And so in terms of the claims, again, this is POG-a. It's not about the people, the workers after January 1 because you don't have an undistributed employee. They cannot represent those other. And I don't think there's any contest to that. Well, how do you understand what they're doing? How do you understand what's at issue in this appeal then? I don't, Your Honor. That's why I feel like I've been invited to the wrong hearing because here we come. And I love these. I have several other tracking cases that involve all these issues. I'd love to see the way it comes out. I'd love to argue that. But here for us, we paid the safe harbor. The purpose of the safe harbor was to save our appearance here. We paid it. There's no dispute about that. We were found to have ‑‑ there is a carve out in the safe harbor, and that is for provision of rest breaks. But Judge Shub found that we provided the rest breaks. That wasn't challenged. So now we're free and clear. And, yes, we can, if you want me to, I can talk about extraterritoriality. I can talk about burden shifting and those sorts of things. But it's really beside the point because we made these people whole per California law 226.2. Okay.  Thank you. Thank you. Sorry, you had to appear. That was an attempt to avoid it. We'll ‑‑ Okay, 226 does not wipe out all the claims. Sorry. 226.2 only wipes out failure to pay. It does not have anything to do with the failure to provide the rest break. I agree with that. But Judge Shub said that he complied with the rest break laws, and I don't see any argument from you that that's wrong. No, no, we did make an argument that was wrong. We said that they did not advise the California drivers of their rights under California law. That by itself is a violation whether you pay or not. Where did you explain exactly what they said and what's wrong about it and how Judge Shub was wrong in your opening brief? I'm sorry. In your opening brief to us, where did you explain what Judge Shub got wrong about the rest break point? We put on page 16, Your Honor, we said that the defendant has denied the plaintiff his rest breaks. We go in there and talk about how 226.2 does not apply to the failure to provide the rest breaks. And then we go into our analysis of all the rest. Right, but where do you explain what they did wrong as to rest breaks? What they did wrong was they did not separately compensate for the rest breaks and did not advise the California drivers that they could even take rest breaks. They never even told our drivers they could take a rest break. That's our claim. Now, Judge Shub, the safe harbor will get them out of not paying them, but you can't get out of the fact that you don't even explain the wage and hour loss to your employees. That's a violation of itself, and that's what we're talking about. So I think we do have a live case here. I don't see what is it that you think you get to recover after they've made the safe harbor payment. One-hour penalty. The safe harbor penalty does not immunize them from everything. It only immunizes if you fail to pay. It doesn't immunize you if you fail to provide or discourage or not inform. It's right there in the 226.2. That was the compromise of the legislature. If you don't advise your people that you have the right to take a break, you can do the safe harbor rule, but it won't immunize your 226 claim. I think you're misreading the statute.  No, no. Only in the instance where an employer fails to pay, not where the employer fails to provide. In other words, if you give your employees a rest break, but then you don't pay them for that rest break, in that situation. But they didn't take the rest breaks. I mean, I think Judge Shub understood that these employees knew that they could take rest breaks. No. What happened was, the evidence at trial is undisputed. Even their witnesses came on the stand and said, we never informed our California drivers to take rest breaks because we didn't even know about the California law. But do we know that they didn't take rest breaks? We know they didn't. You don't pull an 80,000-pound truck over for 15 minutes or 10 minutes. They all testified, we never took a rest break. And another reason they didn't take a rest break. I see the testimony in your brief, which is like the company didn't schedule rest breaks for us. Can you point to something that says we didn't take a rest break? Well, their testimony says that in the transcript, and I think we cited to it. It's certainly in the excerpts of the record. We asked them, point blank, did you ever take a rest break? He said, no, I was always on duty. Because when you have a truck, you have to maintain the truck. So the guy said, I think Behringer said, I couldn't take a break. And unless I'm discharged of my duty of looking after this truck, my responsibility is to always stay vigilant, be with that truck all the time. And so there's no way they could possibly take a break. When they did the safe harbor provision, that gets rid of the pain for the rest break, but it does not, and I would implore you, Judge Watford, if you take a look at 226.2, at the very bottom, and I wish I had it, I should have it, but at the very bottom it says that 226.2 does not apply if you don't provide the rest break, if you don't inform the employees of the rest break. And I argue that as nauseam at closing arguments, so there is no waiver of that. So unless the Court has any more questions, I think we're ‑‑ Yeah. You're right. But just point me again to the provision you want me to look at. It's at the very bottom of what? 226.2 at the very bottom. Of the statute? Of the statute itself. Okay. It says that this applies to the failure to pay, but not for the failure to advise or provide a rest break. Do you know which subsection, by any chance? I'm looking at the bottom. It's in there. I promise you you're right. Okay. We will take a close look at that. Just look at it. Thank you for your argument this morning. The case just argued will be submitted, and we are in recess.
judges: Watford, Friedland, Rakoff